### Petition of ST. JOSEPH TELEPHONE & TELEGRAPH CO.
Docket No. 760347-TP.     Order No. 7604.

Florida Public Service Commission.

January 25, 1977.

David B. Erwin of Woods, Johnston & Erwin, Tallahassee, for the petitioner.

M. Robert Christ, for the commission staff and the public generally.

W. L. Weeks, General Counsel, and Barrett Johnson, Staff Counsel, for the commissioners.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman, and Commissioners WILLIAM T. MAYO and WILLIAM R. BEVIS.

BY THE COMMISSION.

On May 24, 1976, St. Joseph Telephone & Telegraph Co. (petitioner or company) filed with this commission a petition and new proposed rate schedules pursuant to Section 364.05(4), Florida Statutes, seeking our approval to adjust its rates and charges so as to produce additional annual gross revenues in the amount of approximately $843,710.

By Order No. 7284 in this docket we suspended the proposed rate schedules in order to more fully investigate their appropriateness and necessity. As indicated by Order No. 7284, we consider it helpful to evaluate and analyze the company's request by requiring further clarification and amplification at public hearings.

Pursuant to notice this commission held public hearings on October 5, 1976 in Port St. Joe, on October 7, 1976 in Chattahoochee, and on October 8, 1976 in Tallahassee.

We have thoroughly considered the entire record which consists of numerous exhibits, correspondence items, and the testimony from the hearings referred to above. From this review we must conclude that the company should be authorized additional gross revenues of $716,572. These additional revenues will allow the company the opportunity to earn a fair rate of return of 7.07% on a jurisdictional basis. We find that the level of service being provided by the company is adequate to satisfy the requirements of Section 366.041, Florida Statutes.

Petitioner is a telephone company subject to this commission's jurisdiction under Chapter 364, Florida Statutes. It serves all or part of eight counties in the panhandle of Florida. The eight counties include Bay, Gulf, Franklin, Wakulla, Liberty, Calhoun, Gadsden and Jackson.

In those counties, it operates 14 exchanges and as of December 31, 1975, the end of the test period, provided service of 19,505 telephones. The company also provides Extended Area Service (EAS) between Tyndall and Panama City, the beaches and Port St. Joe, Apalachicola and East Point, Altha and Blountstown, Bristol and Blountstown, Bristol at Hosford, and Hosford and Blountstown.

The company in its petition has requested to be allowed to earn a rate of return of 7.07% on its investment in property used and useful in providing local exchange service. The petitioner analogizes its request to that of a "make-whole" petition. [Southern Bell Tel. & Tel. Co. v. Bevis, 279 So.2d 285 (Fla. 1973)]. In a true "make-whole" case there is an attempt to bring the company's earnings back up to the authorized level of earnings as prescribed in its last general revenue case. See Docket No. 750166-TP, where the company was authorized to earn 7.07% on its jurisdictional rate base. In this proceeding the company is proposing a local exchange rate base only, where in the last general rate case involving this company we found that a 7.07% rate of return and a 13% return on equity was fair and reasonable on its jursditional rate base.

In order to consider this case in the posture of a true "make-whole" case, the rate base will be structured jurisdictionally which includes local exchange and toll investment, revenues and expenses.

We believe it to be inappropriate to apply a rate of return which reflects a fair return on equity for a totally jurisdictional operation including both local exchange and toll aspects of the company's business, to the local exchange format encompassed in the company's petition, which does not include the higher risk associated with the toll operations. In other words the proper application of the "make-whole" concept includes not only the last authorized rate of return but the same scope of operations last analyzed and which the latest return established as being appropriate.

Just recently we were confronted with a rate case filed by another telephone company (see Docket No. 760323-TP, Order No. 7566 entered on December 30, 1976) wherein they requested that we consider their revenue requirements on a local exchange basis only. In the proceeding before us, as in that case, we gave the company sufficient notice that we would not be restricted in our inquiry, but could address ourselves to their total jurisdictional operation. Prior to and at the hearings in the instant proceeding the petitioner objected to the commission broadening the scope of their petition in that regard. As in the Docket No. 760323 we found ". . . no merit to the contention that we are limited to the scope of the petition where, as in this case, the company is provided ample notice of our intentions and of our requirements. We find and conclude that we are well within our statutory powers both in requiring the information and in utilizing the information to determine the company's revenue requirements on a basis that reflects its entire jurisditional intrastate operation."

### Rate base

The rate base we are going to consider in this docket represents that which we found to be the company's jurisdictional investment in Docket No. 750166-TP minus a minor adjustment for tax lag —

| | |
|---|---:|
| Plant in Service | $14,081,389 |
| Depreciation Reserve | 4,156,369 |
| Net Plant | $10,525,020 |
| CWIP | 880,209 |
| Future Property | 13,769 |
| M & S | 114,976 |
| Working Capital | 153,877 |
| Company's Adjustments | (140,530)* |
| Intrastate Rate Base Per Company | 11,547,108 |
| *Staff Adjustment* | |
| 20% Tax Lag | (5,269) |
| | $ 6,398,041 |

The tax lag adjustment is brought about because this company failed to recognize the cost free dollars related to the delay in the payment of current income taxes.

## Operating income

As with the rate base we are going to use the same concepts we developed in Docket No. 750166-TP with a few adjustments to make the company net operating income truly reflect the recent test year —

*Company's NOI on an intrastate basis*

| | |
|---|---:|
| Operating Revenue | $3,229,169 |
| Operating Expenses | 2,513,086 |
| Taxes - Other | 222,124 |
| Income Taxes | 135,484 |
| Company's Adjustments | (13,080) |
| NOI Per Company | $ 371,555 |

*Staff Adjustment*

| | |
|---|---:|
| Adjust Operator Wages | $ 3,370 |
| Adjust Capitalization of Maintenance Cost | (1,979) |
| Amortize Rate Case Expenses | 2,859 |
| | $ 375,805 |
| Toll (NOI) Portions of Pro Formas | 3,157 |
| Toll (NOI) True-up | 85,500 |
| Rate Case NOI | $ 464,462 |

The record reflects that the company has reduced the number of operators needed, due to the installation of modern equipment. This will require a reduction in operating expense by $3,370 with a corresponding increase in NOI before taxes. It appears the company has over-capitalized its maintenance cost for the test year by $1,979, this correction will decrease NOI by that amount. The company failed to follow the commission's past practice by not amortizing the previous rate case cost over a five year period. To comply with this requirement will cause a $2,859 increase to NOI before taxes. The last two adjustments shown in the schedule above relate to the recovery of revenues through the intercompany settlement process and are necessary so that the finalized settlement revenues for the test period will be recognized. These two adjustments total $88,657 and will increase NOI by that amount.

## Service evaluation

From an overall view of our evaluation study of the petitioner's service we find their service to customers improved greatly over

the previous year's study. Although there are some areas where improvement is desirable we find the study indicates substantial compliance with our standards. We are certain that the company with the same effort it has exhibited in the past will press forward to accomplish 100% compliance with our required standards of service.

## Tariff provisions

The company has submitted proposed rates in this proceeding designed to generate additional annual gross revenues of $843,710. Inasmuch as we have granted only a portion thereof, some revisions are necessary with respect to its proposed tariff changes. Further, we have revised certain rate modifications suggested by the company and rejected others as being contrary to sound rate-making principles.

The company in this proceeding proposed to increase its service connection charges to recognize the increased cost of performing the work. It was testified to by the company that the average cost of installing a telephone was $52.57 and that they were proposing to increase resident installations from $5 to $20 per line and business installations from $5 to $30 per line. The company proposed to apply these rates on a flat rate concept depending upon the type of installation being performed.

The company during the hearings filed at the request of the commission information in order to convert their proposal to a four-part service connection plan. We have studied the exhibits supplied and have adjusted the company's proposal to conform to the four-part plan and find it should be incorporated in the petitioner's tariff. We find that the company's proposed service connection levels for not-in-place business and resident service should be approved, however, the conversion of the company's flat rate concept to a four-part service connection plan would result in other changes being recalculated using the appropriate service connection category.

The petitioner proposed to increase the rate for temporary suspension (vacation rate) and suspension for non-payment from $2.50 to $10. The commission finds the proposal warranted and should be adopted. These rates are in keeping with good regulatory ratemaking procedure.

The company has proposed the elimination of the service connection charge for color telephone equipment. We feel the company's proposal to eliminate this type of charge should be approved and therefore appropriate revenue adjustment will be made to compensate for this revenue loss. The petitioner on cross-examination supplied the commission with correspondence indicating the

number of customers requesting number changes during the test year. We feel a charge should be established for this service. We find that a charge of $10 is adequate for customer requested number changes.

The commission finds that the company should incorporate in its service connection section of the tariff a payment plan similar to those established for other companies to assist the customer in paying the higher installation charges. We find, however, that a 3 month period should be allowed instead of a 6 month period included in other proceedings. This is primarily due to the rates proposed in this docket being less than those for other companies.

The company presently charges for the replacement of a mounting or a retractable cord due to wear or defective materials. We find that the replacement of a cord after the initial installation charge, with one of the same length and general characteristics should be at no additional charge. We think that the installation charge should cover this equipment.

The petitioner in this proceeding has proposed to apply an across-the-board increase of 10% of all PBX equipment. They presently provide PBX service to approximately 13 subscribers. The rates for these customers have not been increased since the company's last rate increase in 1962 or since the equipment was installed, in most cases, ten years ago. These rates having not been adjusted for such an extended period of time, the commission feels an increase higher than the company's proposal should be applied. Therefore, with the exception of rates the company proposed to decrease and rates for new equipment being added to the tariff, the commission has increased the rates by 25% over the present level. This increase will help offset local service increases which in turn will benefit the PBX customer by lower PBX trunk rates.

The petitioner in this docket has proposed to increase the charge for additional listing from 25¢ to 50¢. The commission finds that this proposal should be approved.

The company presently offers a variety of additional listings, however, the company does not have a charge for providing non-published and non-listed telephone numbers. From evidence supplied by the company outlining the number of non-published numbers and non-listed numbers we find that the establishment of a $1 per month charge for non-published numbers and a 75¢ charge for non-listed numbers should be assessed against the customers for that service. These charges are in line with other charges approved by this commission and we feel that they are proper for the service which is being provided by this company.

The company in this proceeding has proposed no increase on residential and business extensions. However, a 10% increase was proposed to be placed by PBX extension stations.

We find the company's proposal as it relates to PBX extension rates should be denied and a uniform extension rate for residents and for business should be established. Therefore, we find the company's PBX extension rate should remain at $2 and the PBX extension rate for motels be increased from $1.50 to $1.65. In addition, we find the business extension rate which is presently $1.75 should be increased to $2 and the resident's extension should be increased from $1.50 to 1.65.

The company in its presentation has proposed varying increases on items found in the miscellaneous section of the tariff. We find that these increases should be approved as proposed with the exception of the monthly rates applied to jacks. The commission finds that the monthly charge should be eliminated.

The company has proposed to increase its charge for semi-public coin boxes from $2.50 to $4 and we find that it should be approved.

The company proposed in the key telephone section of their tariff to package key systems, to enable customers to more readily understand the key system technology and promote ease in administering the service.

The commission finds the company's proposal in this section should be approved as proposed with one exception. The exception is the one-five (1-5) button Key Set proposed to be increased to $3.25, be reduced to $2.75. We feel an adjustment downward in the proposed rate of $2.75 would ease the increase on key system customers of which the majority are the small system users. We find this rate would be in the best interest of those subscribers.

The company in its presentation recommended a modest increase in the foreign exchange and mobile telephone and paging sections of their tariff and we find the company's proposals in these areas should be approved.

The petitioner has made other proposed increases throughout the tariff, but on the items which had no unit in service as of the test period. We have reviewed these rates and find that they should be increased along the company's proposed levels.

The company in this proceeding proposes substantial local service rate increases, while petitioner's proposal is along rate design patterns used by this commission, certain adjustments in the company's rate level and rate relationships will be made to conform to the revenue level authorized. These changes also eliminate

special rate considerations which no longer serve best the interests of the general subscriber body.

We feel that an adjustment in the rates should be made in two ways; by making appropriate rate relationship changes and by increasing present rates to achieve proposed revenue levels.

The residential and business grades of service have been increased at varying degrees. These changes improve the existing rate relationships and establish these rates in line with the value of service principle of rate design.

The company has proposed a rotary differential of 1.4 times the business individual line rate of customers utilizing rotary line configurations. This proposal recognizes the customers' use of the service, however, this commission feels the proposal should be reduced to 1.3 time the business one-party rate.

The PBX differential change proposed by the company was to increase the rate 2 times the individual business-rate. This proposal is designed to reflect the customer value of service. The PBX customers are presently being charged varying levels of rates, due primarily to previous approved rates being established on a customer by customer basis. This discrepancy will be eliminated and a standard PBX rate established. The commission finds a PBX differential of 1.80 will best reflect the value of service principles. Inward only PBX trunks will be increased to 75% of their appropriate PBX trunk rate.

Semi-public telephone rates are presently at the business individual line rate and the commission finds that the differential should remain at this level, however, increases will occur to these customers due to the increase in the B-1 rate.

Joint user rates are proposed to be increased from $1 for residents and $2 for business to $2.50 and $3.50, respectively. We find that these increases should be approved.

The company proposed to eliminate concessions to churches, and schools which presently allow these subscribers to receive service at the residential one-party rate. The proposal by the company is to classify these customers at a business individual line rate. The commission finds the elimination of this concession is in keeping with our actions in similar cases and is approved.

As to customers who live on St. George Island and presently pay a 25¢ surcharge for the local exchange service, the commission finds the surcharge should be dropped and the customer pay only the appropriate exchange rate.

The commission finds that local exchange service rates of Alligator Point and Wakulla Springs for residential-one and business-one should be increased to $7.40 and $17.65, respectively. Tyndall Air Force Base local exchange rates for R-1 and B-1 should be at a level of $8.35 and $20.05, respectively. All other exchange should be raised as follows — R-1 $7.80, R-2 $6.15, R-4 $5.85, B-1 $18.75, B-2 $15.65, and B-4 $14.30.

In consideration of the foregoing, it is ordered that the petition of St. Joseph Telephone & Telegraph Co. for authority to increase its rates and charges is granted to the extent provided herein.

It is further ordered that all tariff provisions authorized and corrected herein are found to be fair and reasonable.

It is further ordered that all findings and conclusions herein be and the same are hereby approved.

It is further ordered that St. Joseph Telephone Company is authorized to file tariff provisions consistent herewith to become effective with the billing cycle beginning on February 1, 1977.

It is further ordered that the company give appropriate notice to each customer concurrently with the billing which first reflects the increases authorized herein explaining the nature and purpose and effect of the rate increase. Said notice shall be submitted for the commission's approval prior to the time it is mailed to the customers.